UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN M. RECK,<br>    Plaintiff,<br><br>v.<br><br>MAX BERTSCH,<br>    Defendant. | Case No. 3:18-cv-861-MPS |

**SUMMARY JUDGMENT RULING**

**I.    INTRODUCTION**

In this case, a lawyer claims that a police officer surreptitiously recorded a private conversation between the lawyer and his son at the police station and thereby violated the lawyer's constitutional, statutory, and common law rights. Stephen Reck, an attorney and the plaintiff in this case, accompanied his 18-year-old son to an interview at the New London Police Department in November 2016. New London police sergeant Max Bertsch, the defendant, wanted to question Reck's son about an alleged sexual assault at Mitchell College, where the son was a student. At one point during the interview, after Reck asked to speak to his son privately, Bertsch stepped out of the interview room. Allegedly unbeknownst to Reck, however, his private conversation with his son was being recorded audio-visually. Bertsch preserved the recording but never listened to it and did not use it to prepare the subsequent arrest warrant for Reck's son, who later pled guilty to misdemeanor charges. Reck has sued Bertsch for alleged violations of his constitutional rights and the federal wiretapping law, and for state common law torts. Bertsch now moves for summary judgment as to all claims.

1

I grant in part and deny in part the motion. Reck has abandoned his constitutional claims, and the evidence in the record, even when all factual disputes are resolved in Reck's favor, does not support Reck's state law claim of intentional infliction of emotional distress; while I do not doubt that Reck's emotional distress is genuine, Bertsch's conduct, which did not involve listening to or otherwise making use of the supposedly private and privileged conversation, does not amount to the sort of outrageous conduct necessary to make out this claim. A factual dispute concerning whether Bertsch intended to record the conversation between Reck and his son, as opposed to only the conversations in the interview room during which Bertsch was present, and another factual dispute concerning whether Reck knew or should have known the interview was being recorded preclude me from granting summary judgment as to the federal wiretapping claim and the state law invasion of privacy claim.

## II. FACTS

The facts are taken from the parties' Local Rule 56 statements and the underlying evidentiary record. They are undisputed unless otherwise indicated.

On November 1, 2016, the New London Police Department received a report of an alleged sexual assault involving two students at Mitchell College. Def. L.R. 56(a)(1) Stmt. ("Def. Stmt."), ECF No. 15-2 ¶ 1. The victim of the alleged assault identified Cole Reck, Plaintiff's son, as her assailant. *Id.* ¶ 2. On November 14, 2016, Cole Reck came to the police station to be interviewed, along with his parents, Plaintiff Stephen Reck and Stacy Reck. *Id.* ¶¶ 4-5. Stephen Reck is an attorney, Reck Dep., ECF No. 15-10 at 4–5, and the defendant, Sergeant Max Bertsch of the New London Police Department, knew that fact at the time of the interview, Bertsch Dep., ECF No. 15-8 at 27. Before meeting the Recks in the lobby of the police station, Bertsch "activated audio-visual recording equipment monitoring the interview room by using a switch in

a cubic[le] in the back of the Detective Bureau." ECF No. 15-2 ¶ 8. Bertsch "had previously received a memorandum from the Connecticut State's Attorney's office that all sexual assault interviews were to be audio/visual recorded." *Id.* ¶ 11.

Bertsch met the Recks in the lobby of the building and escorted them to an interview room on the second floor. *Id.* ¶ 6. Bertsch avers that, en route to the interview room, he and the Recks "passed a total of five signs indicating that the building was video monitored." *Id.* ¶ 7; *see also* ECF No. 15-5 (photo of sign reading, "This facility is video monitored and phones may be recorded"); ECF No. 15-6 (photo of sign reading, "This location is being video monitored"); ECF No. 15-7 (same). Stephen Reck testified at his deposition, however, that he did not "observe any signage regarding audio or video recording" anywhere in the building. Reck Dep., ECF No. 15-10 at 17–18, 38. Bertsch "did not separately orally advise the Recks that the audio-visual recording [in the interview room] was taking place," and Stephen Reck did not ask "if any recording was taking place." ECF No. 15-2 ¶¶ 9–10.

Bertsch interviewed Cole Reck while his parents were present. After Cole Reck made an initial statement denying any sexual contact with the victim, "Stephen Reck asked Sgt. Bertsch and Stacy Reck to leave the interview room." *Id.* ¶ 13. In his deposition, Bertsch testified that his understanding of Reck's request "was a father wanted to speak with his son himself."[1] Bertsch Dep., ECF No. 15-8 at 27. Bertsch and Stacy Reck waited in the hallway while Stephen Reck and Cole Reck conversed inside the interview room. ECF No. 15-2 ¶ 15. Bertsch testified that he

---

[1] Reck objects to the inclusion of this fact in Bertsch's L.R. 56(a)(1) statement, arguing that "state of mind is not a relevant consideration in assessing a motion for summary judgment." Pl. L.R. 56(a)(2) Stmt. ("Pl. Stmt."), ECF No. 16-1 at 2. As discussed below, I agree that genuine disputes of material fact exist as to Bertsch's intent and state of mind when he left the interview room and did not turn off the recording equipment. I mention Bertsch's testimony here for context but do not consider it an undisputed fact.

did not "turn off the audio visual recording" during this period because he did not want to leave any of the Recks unattended in the building.[2] Bertsch Dep., ECF No. 15-8 at 27–28. Bertsch had also been "trained that when recording an interview not to stop the recording because it could indicate that the recording had been tampered with." Def. Stmt., ECF No. 15-2 ¶ 19. After "approximately 25 minutes," Stephen Reck told Bertsch that "Cole Reck did have consensual sexual contact with the victim." *Id.* ¶ 16. Cole Reck then dictated and signed a sworn statement. *Id.* ¶ 17.

After the interview, Bertsch placed the recording on a DVD, placed it "into New London Police Department evidence," and has never "review[ed] the audio portion of the recording of the time when Stephen Reck spoke to Cole Reck alone." *Id.* ¶ 20–21. Bertsch spoke with the prosecuting State's Attorney about the recording, and she "instructed him to preserve the evidence and document the specifics." *Id.* ¶ 22. "[A]t the direction of the State's Attorney," Bertsch reviewed the "video portion" of the recording to "determine the exact time stamps of when Stephen Reck spoke to Cole Reck alone," but turned off and did not listen to the audio, and he then documented those exact time stamps in a supplemental police report on December 13, 2016. *Id.* ¶¶ 23–24.

Bertsch signed an arrest warrant application for Cole Reck on April 20, 2017, and the court authorized the warrant on May 3, 2017. *Id.* ¶ 25. Bertsch's application did not include any information discussed alone between Stephen Reck and Cole Reck. *Id.* ¶ 26. Cole Reck was charged with Sexual Assault and pled guilty to three misdemeanors related to the November 1, 2016 incident. *Id.* ¶¶ 27–28.

---

[2] Reck objects to this fact in Bertsch's statement for the same reason. I agree that there is a genuine dispute of material fact as to Bertsch's intent, so I consider Bertsch's testimony only for context and not as an undisputed fact.

## III. LEGAL STANDARD

The court must grant a motion for summary judgment if the moving party shows "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* In reviewing the record, the court "must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013).

## IV. DISCUSSION

### A. <u>Constitutional Claims</u>

The operative complaint, ECF No. 1, asserts three federal constitutional claims, alleging that Bertsch violated (1) Reck's right to engage in the practice of his profession under the First and Fourteenth Amendments (Count One), (2) Reck's right to family privacy and integrity under the First, Fourth, and Fourteenth Amendments (Count Two), and (3) Reck's right to substantive due process under the Fourteenth Amendment (Count Three). Reck's brief in opposition,

5

however, states that Counts One and Two are withdrawn, and makes little substantive attempt to defend Count Three, stating that "the plaintiff's substantive due process claim should be considered only if the court deems none of his other federal claims to be viable" and "this count may well be deemed superfluous." ECF No. 16 at 14. I conclude below that the federal wiretapping claim is "viable." Therefore, the substantive due process claim is dismissed.

### B. Federal Wiretapping Claim

Count Four of the complaint alleges that Bertsch "unlawfully intercepted the plaintiff's private oral communications" in violation of the federal wiretapping statute, 18 U.S.C. §§ 2510–20. Section 2520 of Title 18 of the United States Code creates a private cause of action in favor of "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation" of the federal wiretapping statute against "the person or entity . . . which engaged in that violation."[3] Bertsch argues that he is entitled to summary judgment on Reck's claim under this provision because (1) he did not intend to record the events in the interview room during the time that he and Stacy Reck were in the hallway; (2) his conduct falls within a statutory exception for the use by a "law enforcement officer in the ordinary course of his duties" of "any telephone or telegraph instrument, equipment or facility, or any component thereof," 18 U.S.C. § 2510(5)(a)(ii); and (3) he is entitled to qualified immunity. ECF No. 15-1 at 19–22. I do not find these arguments persuasive.

The first argument fails because it depends on disputed facts. Bertsch admits that he turned on the recording equipment in the interview room before he went to the lobby to escort the Recks to the interview room. Def. Stmt., ECF No. 15-2 ¶ 8; Bertsch Dep., ECF No. 15-8 at

---

[3] Although the statute is often referred to as a "wiretapping" law, it also governs the interception of electronic and oral communications, as the language quoted in the text above makes clear.

31. Although Bertsch states that he had never previously had an interview interrupted in this manner, he testified that the reason he did not go to the control room to turn off the recording equipment after he and Stacy Reck stepped into the hallway was that officers were not allowed to leave civilians—in this case, Stacy Reck—unaccompanied in the police station. Def. Stmt., ECF No. 15-2 ¶ 18; *see also* Bertsch Dep., ECF No. 15-8 at 26–28. Whatever the force of that reason might be, it suggests that he made a deliberate choice to continue recording the events in the interview room. He also testified that he was aware that Reck was an attorney, that he knew that it was improper to record confidential conversations between an attorney and his client, and that he later sought guidance from the State's Attorney's Office about the recording of the conversation between Reck and his son. Bertsch Dep., ECF No. 15-8 at 25–26, 36, 38. From all of this, a reasonable juror could infer that Bertsch intentionally continued the recording during the time that Reck and his son were alone in the room and was aware that he was doing so illegally. To be sure, this is not the only permissible inference from these events, but it is one of them.

The second argument fails because Bertsch has failed to show that he falls within the statutory exception for a law enforcement officer's use of "any telephone or telegraph instrument, equipment or facility, or any component thereof" in the "ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). Bertsch argues that he is entitled to this exception "as a matter of law," ECF No. 17 at 2, but, as the party moving for summary judgment, Bertsch bears the burden of demonstrating that he is so entitled. Fed. R. Civ. P. 56(a); *see also In re State Police Litig.*, 88 F.3d 111, 123, 125 (2d Cir. 1996) (noting in § 2520 case that "the moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle him to judgment as a matter of law," and that therefore "[i]t is no answer to say, as

defendants do, that plaintiffs have produced no specific evidence" of particular § 2520 elements, "for on this motion for summary judgment, plaintiffs do not have the burden of proof").

Bertsch points to no evidence in the record describing in any detail the type of equipment he used to record Reck's conversation with his son. At his deposition, Bertsch testified that "there was a small cubical room in the back of the Detective Bureau [of the New London Police Department] that has a switch and you flip the switch and it tapes your interview [in the interview room] audio and visual." ECF No. 15-8 at 19. He referred to the medium of the recording as "the tape" and "a disc." *Id.* at 36–37. I am unaware of any more specific description in the record of the equipment used to capture the conversation between Reck and his son, and Bertsch does not in his brief make any attempt to show that such equipment constitutes "any telephone or telegraph instrument, equipment or facility, or any component thereof." What is clear is that what was captured was not a telephone or telegraph communication. The complaint alleges, and the evidence in the record suggests, that the communication captured was an "oral" one, *i.e.*, a face-to-face conversation between Reck and his son while they were in the interview room. ECF No. 1 ¶ 20 (alleging that the defendant "unlawfully intercepted the plaintiff's private oral communications"); Reck Dep., ECF No. 15-10 at 29–34 (Reck describing in general terms the conversation with his son while Bertsch was outside interview room). Nothing in the record suggests that Reck and his son were communicating over telephone or telegraph. Under the circumstances, there is at least a genuine dispute of material fact about whether this statutory exception applies.

In addition, Bertsch notes that in *United States v. Friedman*, 300 F.3d 111 (2d Cir. 2002), the Second Circuit left open the question whether this statutory exception—termed the "'ordinary course' exception" in that case—required a showing that the interceptee received

8

some notice that his communication might be intercepted. The *Friedman* court nonetheless rejected the defendant's challenge, holding that, even if notice was required, he (the interceptee) had received the requisite notice, *i.e.*, "notice that a reasonable person could understand to mean that [his] calls would be . . . subject to interception." *Id.* at 123. Bertsch invokes this language and points to evidence that there were signs posted in the hallways of the New London police station indicating that the area was being video monitored. ECF No. 15-1 at 22 (arguing that "Plaintiff passed five separate signs indicating that video monitoring was taking place."); *see also* ECF Nos. 15-5, 15-6 & 15-7 (photos of signs). But Reck testified he saw no signs in the police station warning of monitoring, Reck Dep., ECF No. 15-10 at 17–18, which at least raises a factual dispute about whether they were there at the relevant time, and Bertsch points to no evidence that any such signs were posted in the interview room itself. For his part, Reck testified he was wholly unaware of the possibility that his conversation with his son was being monitored and never would have brought his son to the police station in the first place had he known. Reck Dep., ECF No. 15-10 at 24. He testified that he had communicated to Bertsch before arriving at the police station that his son had learning and cognitive disabilities, including difficulties with communication, and that he understood from Bertsch that they would first discuss the matter together "to get to the bottom of it," and then Reck's son would be asked to commit his version of events to writing. *Id.* at 12–13, 23–24, 28. Finally, Reck testified that, during the interview, he asked Bertsch and his own wife to step out, so that he could have a "private" conversation with his son, one he believed was also protected by attorney-client privilege. *Id.* at 13–14, 22, 28. In light of Bertsch's assurances, he testified, he viewed Bertsch's recording of the conversation between him and his son as trickery. *Id.* at 23. I am required to credit Reck's testimony on this motion, and when I do so, it is clear that a reasonable juror could find that Reck did not receive

9

"notice that a reasonable person could understand to mean" that his communications would be subject to interception.

Bertsch's third argument—qualified immunity—also fails at the summary judgment stage because it hinges on the same factual disputes identified above. Although his brief is cursory on this point, Bertsch suggests that qualified immunity protects him because the level of "intentionality" required for unlawful interception under the statute and the degree to which notice is required under the "ordinary course" exception are not settled issues in the Second Circuit. ECF No. 15-1 at 22. As discussed above, however, there are factual disputes on both these points. A reasonable juror could find that Bertsch deliberately recorded Reck's conversation while alone with his son, in the sense that his act was "the product of [his] conscious objective rather than the product of mistake or accident." *In re State Police Litigation*, 888 F. Supp. 1235, 1263 (D. Conn. 1995) (citing Second Circuit cases). This has long been the "clearly established" standard for intentionality under the statute. *Id.* A reasonable juror could also find that Reck had no inkling—and no reason to have any inkling—that the conversation was being recorded, which makes any uncertainty about the legal requirement for notice moot. And in any event, Bertsch has failed to show that the facts of this case fall within the plain language of the "ordinary course" exception in the statute, which, as noted, requires the use of telephone or telegraph equipment, or that an officer of reasonable competence could have concluded that the exception applied. *See Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) ("[A]n officer is … entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context."). For these reasons, I find that genuine disputes of material fact preclude a finding of qualified immunity on this record.

Because there are genuine disputes of material fact regarding Bertsch's liability under 18 U.S.C. § 2520, I deny summary judgment as to Count 4 of the complaint.

C. **Common Law Claims**

  1. *Invasion of Privacy*

Count Five of the complaint alleges the common law tort of invasion of privacy. Connecticut recognizes four species of this tort, *Venturi v. Savitt, Inc.*, 191 Conn. 588, 591 (1983), one of which, unreasonable intrusion on the seclusion of another, is implicated here. Bertsch contends that he is entitled to summary judgment on this count because he did not act intentionally, *i.e.*, his recording of the conversation between Reck and his son was inadvertent. This may be so, but as shown above, there is evidence in the record to the contrary, and a reasonable juror could find based on that evidence that Bertsch did act intentionally. I therefore deny summary judgment as to this count.

  2. *Intentional Infliction of Emotional Distress*

Count Six asserts a claim for intentional infliction of emotional distress.[4] Under Connecticut law, such a claim requires the plaintiff to show "(1) that the actor intended to inflict

---

[4] Count Six of Reck's complaint alleges both that "[t]he defendant's conduct constituted the crime of eavesdropping, in violation of Section 53a-189 of the Connecticut General Statutes" and that "the defendant's conduct constituted the intentional infliction of emotional distress ["IIED"] in violation of Connecticut common law." ECF No. 1 at 5. In his opposition brief, Reck summarizes the allegations in the complaint and characterizes Count Six as an IIED claim, ECF No. 16 at 2 & 5, but then states, "[r]elated to these claims, the plaintiff asserts, among other things, that the defendant's conduct constituted the crime of eavesdropping in violation of Section 53a-189 of the Connecticut General Statutes." ECF No. 16 at 2. To the extent that Reck attempts to assert an independent cause of action for violating § 53a-189, I dismiss any such claim because Reck cites no authority suggesting there is a private right of action under § 53a-189 for a victim of "mechanical overhearing," Conn. Gen. Stat. § 53a-189, and I am unaware of any. While Conn. Gen. Stat. § 54-41r creates a cause of action for "[a]ny person whose wire communication is intercepted, disclosed or used in violation of . . . sections 53a-187 to 53a-189, inclusive," that provision does not apply here since there is nothing in the record suggesting Reck made a "wire communication." Conn. Gen. Stat. § 54-41a (defining "[w]ire

emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Watts v. Chittenden*, 301 Conn. 575, 586 (2011). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000). Bertsch argues, among other things, that his conduct does not satisfy the extreme and outrageous requirement of this claim. I agree.

Reck admits that Bertsch was instructed to record all interviews in sexual assault cases, Def. Stmt., ECF No. 15-2 ¶ 11; Pl. L.R. 56(a)(2) Stmt. ("Pl. Stmt."), ECF No. 16-1 at 1, and Reck does not suggest that Bertsch had any inkling before the interview began that Reck would, at some point, ask to speak with his son privately in the interview room. The evidence thus does not suggest that the interception was part of a premeditated scheme. Further, Reck does not dispute that, after the interview was over, Bertsch sought guidance from the State's Attorney's Office on what he should do with the portion of the recording involving only Reck and his son, or that Bertsch was told to preserve it. Def. Stmt., ECF No. 15-2 ¶ 22; Pl. Stmt., ECF No. 16-1 at 2. Nor does Reck dispute that Bertsch did not listen to the interview, and Reck admits that Bertsch did not use it to seek the warrant or otherwise to aid in the prosecution of Reck's son. Def. Stmt., ECF No. 15-2 ¶¶ 21, 26; Pl. Stmt., ECF No. 16-1 at 2–3. Nor is there any evidence in

---

communication" as "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of telephone or telegraph"). The private right of action created by Conn. Gen. Stat. § 52-570d similarly applies only to "oral private telephonic communication[s]."

the record that the State's Attorney's Office used the recording of the conversation between Reck and his son in prosecuting the son.[5]

In his deposition, Reck testified—argued, really—that the State would never have been able to prosecute his son at all had the interview not been recorded, and that the recording facilitated the prosecution. Specifically, he contended that the first portion of the interview—while Bertsch was in the room—showed his son making statements that he later contradicted in his sworn statement, and that this assisted the State's prosecution. Reck Dep., ECF No. 15-10 at 23 ("I said [']Cole all you had to do is tell the truth, they have no case, but now they are going to claim they have a case because you changed your story['] . . . ."). This argument suffers from two flaws. First, even in the absence of a recording, nothing would have prevented the State from introducing evidence of the same contradictions through the testimony of Bertsch. Second, the contradictions would have existed—and could have been used by the State—even had Bertsch turned off the recording equipment while only Reck and his son were in the room; in other words, Bertsch's recording of the conversation between Reck and his son, by itself, does not appear to have made the prosecution of Reck's son any more likely.

---

[5] Reck testified at his deposition that he learned that "somebody from the state[']s attorney's office had reviewed the tape," but his testimony on this point was vague and plainly based on hearsay. Reck Dep., ECF No. 15-10 at 46–47 ("I do know for a fact that somebody from the state's attorney reviewed it, I remember that being discussed. Ann Mahoney said [']I didn't review it['] and she said [']I can't review it because I'm the prosecutor, so I'm having somebody else at the state's attorney review it.[']"); *see* Fed. R. Evid. 802; *Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 31–32 (2d Cir. 2016) ("[T]he party opposing summary judgment cannot rely on inadmissible hearsay in opposing a motion for summary judgment[ ] absent a showing that admissible evidence will be available at trial." (internal quotation marks omitted)). Further, neither Reck's deposition testimony nor anything else in the record suggests that the conversation between him and his son was used to prosecute his son or that Bertsch had anything to do with any prosecutor's decision to listen to the conversation.

Finally, Bertsch's conduct does not have the hallmarks of the type of conduct found to be extreme and outrageous enough to make out a claim of intentional infliction of emotional distress. It did not involve violence or physical harm; it did not involve harming a child or taking advantage of an otherwise vulnerable person (Reck's son was 18, he was not under a conservatorship, the recording was not used against him, and he himself is not a plaintiff here); and it did not involve premeditation or repetitive conduct. It involved, instead, the one-time recording of a conversation at a police station by a police officer in the course of his law enforcement duties. The police officer never listened to the conversation and never made use of it.

Reck's deposition strongly suggests that he and his family have indeed suffered emotional distress as a result of these events. Reck describes a deteriorating relationship with his son and his wife as a result of the interview at the police station and the subsequent prosecution and guilty pleas. Reck Dep., ECF No. 15-10 at 66 (testifying that his wife's relationship with their son "has just been completely changed," that "it's like they almost can't even talk now," and that his son has "been extremely depressed"). But when the summary judgment record is considered as a whole, and even when it is viewed in the light most favorable to Reck, Bertsch's conduct—though potentially a violation of Reck's federal statutory rights and a common law invasion of privacy—is simply not extreme and outrageous. I therefore grant summary judgment to the defendant on Count Six.

V. **CONCLUSION**

For the reasons set forth above, the defendant's motion for summary judgment is GRANTED in part and DENIED in part. The plaintiff abandoned Counts One and Two, I

dismiss Count Three, and I grant summary judgment as to Count Six. However, I deny summary judgment as to Counts Four and Five.

Contrary to what is stated in the Scheduling Order for this case, ECF No. 11, the parties' Joint Trial Memorandum will be due **within 60 days** of this ruling. The case will be considered trial ready **15 days** after the filing of the Joint Trial Memorandum. The Court will set a date for jury selection after reviewing the Joint Trial Memorandum.

If the parties are interested in referral to a U.S. Magistrate Judge for mediation, they should file a joint statement certifying that (1) counsel have conferred with their clients and each other, (2) the parties wish to proceed to mediation, (3) the parties are willing to participate in settlement efforts at such mediation in good faith, and (4) counsel believe that a mediation stands at least a reasonable chance of resolving the case without trial.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
March 25, 2020